**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-15-0000411**
**29-SEP-2017**
**08:41 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

IN THE INTEREST OF CM, A MINOR

NO. CAAP-15-0000411

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(FC-J NO. 0094704)

SEPTEMBER 29, 2017

FUJISE, PRESIDING JUDGE, LEONARD AND CHAN, JJ.

OPINION OF THE COURT BY LEONARD, J.

Minor-Appellant CM appeals from the May 1, 2015
Findings of Fact [(**FOFs**)], Conclusions of Law [(**COLs**)], Decision
and Order (**Order Denying Reconsideration**) entered by the Family
Court of the Fifth Circuit (**Family Court**).[1]  CM also challenges
the Family Court's April 2, 2015 Amended Modified Order Revoking
Probation and Resentencing (**Amended Modified Order**), which

---

[1]     The Honorable Edmund D. Acoba presided.

ordered the payment of restitution to the victim of CM's law violation, as well as the Family Court's previous orders for restitution, which were entered on March 2 and 16, 2015.

As set forth herein, we hold: (1) the Family Court did not err in concluding that family courts, like criminal courts, need not sort out insurance indemnities, subrogation rights, and/or other potential civil law implications before ordering a minor law violator to repay his or her victim under the family court restitution statute; (2) as the Family Court recognized, the family court restitution statute is permissive or discretionary and does not mandate an order for restitution in every case in which restitution is requested; (3) the Family Court erred, however, in relying strictly on adult criminal restitution cases and principles, rather than considering the greater flexibility provided in the family court restitution statute, which authorizes a family court to order a minor law violator to make restitution by way of services to the victim, or to render community services instead, and which does not specifically require reimbursement of the "full amount" of the victim's loss; and (4) the Family Court erred in ordering monthly restitution payments of $300.00 because (a) the Family Court failed to consider CM's ability to make restitution payments for the purpose of establishing the time and manner of payment and (b) the Family Court issued various restitution orders in varying amounts, without notice, an opportunity to be heard, or an explanation as to why its decision changed. We vacate and remand.

I.    BACKGROUND FACTS

On January 29, 2014, Plaintiff-Appellee State of Hawai'i (the **State**) filed a Petition charging CM with certain law violations, pursuant to Hawaii Revised Statutes (HRS) § 571-11(1) (2006).   In relevant part, the Petition alleged:

> COUNT 3:  On or about November 2, 2013, in the County of Kaua'i, State of Hawai'i, [CM] did intentionally or knowingly cause serious bodily injury to [a minor victim (**MV**)] thereby committing the offense of Assault in the First Degree in violation of [HRS] Section 707-710(1).[2]

The Family Court's unchallenged Findings of Fact (FOFs) include that CM intentionally shot a pellet gun at MV's face. The pellet entered and exited MV's eye, lodging itself in MV's facial skin, leaving fragments and pieces in the eye, with a loss of vision.  MV's resulting medical bills were evidenced to be $23,434.85.  MV's medical bills were paid in full by Med-QUEST, which provided medical insurance to MV's family.  CM was thirteen years old at the time of the shooting incident.

At a November 10, 2014 adjudication hearing, CM entered into a plea agreement with the State.  CM admitted to the Assault in the First Degree and the State dismissed the remaining counts. There was no other agreement as to the disposition.  When the court inquired about restitution, CM's counsel stated there was no agreement as far as restitution, but noted that the Deputy Prosecuting Attorney (**DPA**) "is trying to verify and will provide me the documentation regarding . . . that issue."  In conjunction

---

[2]    HRS § 707-710(1) (2014) states:

> § 707-710 **Assault in the first degree.**  (1)  A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person.

with the plea colloquy, *inter alia*, the court explained and CM acknowledged that CM could be ordered to pay restitution.

The Family Court adjudged CM a law violator as to Count 3, Assault in the First Degree. The Family Court ordered an updated social study and revoked CM's probation. The Updated Social History Report, which was filed in the Family Court on January 5, 2015, reported that MV's mother "stated her husband would be submitting medical bills to request restitution."

In addition, at the January 5, 2015 disposition hearing, the DPA asked the Family Court "to continue this matter for a restitution hearing." The DPA stated that the victim's family "were going to get all of the medical records together and submit it." The DPA further stated, "[s]o when I spoke to the family, they were, yes, wanting to have restitution awarded to them." The DPA argued to the Family Court, "I think the status of the law is that if there are medical bills, then the minor and or the minor's family should be responsible for those medical bills. And I'll be the first to say, when I spoke with the family, most of their expenses were covered by Quest. But I don't think that would make any difference." On January 5, 2015, the Family Court filed an order revoking the probation period set in conjunction with a prior petition, resentencing CM to an extended period of probation, and setting various conditions to the probation.

On March 2, 2015, the Family Court held a further hearing, including a hearing on restitution. CM's counsel stipulated to the entry of MV's medical records, stating that he

had no objections to admitting the records into evidence. The requested amount of restitution, $23,434.85, was supported by the documents admitted into evidence. There was no challenge to the reasonableness of the services, but the defense questioned whether the full amount should be awarded because both CM and MV's families had Quest insurance. CM argued that, in effect, his insurance carrier already paid for all of the medical services. CM further argued that this case is distinguishable from State v. Tuialii, 121 Hawaiʻi 135, 214 P.3d 1125 (App. 2009), because the nature of the crime did not benefit or enrich CM in any way.

After the hearing, on March 2, 2015, the Family Court entered an "Amended Order Revoking Probation and Resentencing," which ordered restitution to MV in the amount of $23,434.85, to be paid in monthly installments of no less than $200.00. The order further provided that, in the absence of payment by CM, CM's parents pay restitution to MV in the amount of $23,434.85, in monthly installments of no less than $200.00.

On March 16, 2015, the Family Court entered a "Modified Order Revoking Probation and Resentencing" (**Modified Order**).[3] With respect to restitution, the Modified Order (1) decreased the total amount of restitution that CM is required to pay from $23,434.85 to $6,884.04, and (2) increased the monthly

---

[3] The Modified Order was signed by the presiding judge on Friday, March 13, 2015, and then entered on Monday, March 16, 2015. It does not appear from the record on appeal that there was a further hearing or any submission from the parties prior to the entry of the Modified Order on March 16, 2015. A brief hearing was held later in the day on March 16, 2015, but restitution was not discussed.

5

installments that CM is required to pay from $200.00 to $300.00. The Modified Order further provided that, in the absence of payment by CM, CM's parents pay restitution to MV in the amount of $6,884.04, in monthly installments of no less than $300.00.

On March 20, 2015, CM filed a Motion for Reconsideration of Court's Order for Restitution on March 2, 2015 (**Motion for Reconsideration**). The Motion for Reconsideration contained no reference to the Modified Order. Rather, CM argued that ordering restitution in the amount of $23,434.85 was improper because the statutory provisions concerning restitution in proceedings involving minors, HRS §§ 571-48(11) and (13), are distinguishable from the restitution statutes applicable to adults, in particular HRS § 706-646. For this reason, and others, CM argued that State v. Tuialii is distinguishable and should not be applied to this case.[4] The State filed a response and a hearing on the Motion for Reconsideration was set for April 20, 2015.

Prior to that hearing, on April 2, 2015, the Family Court entered the Amended Modified Order.[5] In the Amended Modified Order, the Family Court increased the total restitution amount back to the original amount of $23,434.85, in monthly installments of no less than $300.00. The Amended Modified Order

---

[4] The Motion for Reconsideration did not seek any modification of the requirement that, in the absence of payment by CM, CM's parents pay the restitution to MV.

[5] It does not appear from the record on appeal that there was a further hearing or any submission from the parties prior to the entry of the Amended Modified Order on April 2, 2015, except for the Motion for Reconsideration, which is not mentioned in the Amended Modified Order.

did not further change the total restitution amount payable by CM's parents ($6,884.04), in the absence of payments by CM.

At the April 20, 2015 hearing, CM argued that the restitution statute applicable to minors, HRS § 571-48(11), should not be interpreted in the same manner as the penal code restitution statute, particularly in light of the policy and purpose of family court system, i.e., to promote reconciliation of distressed juveniles and to foster rehabilitation of juveniles, as well as to render appropriate punishment and reduce juvenile delinquency. Basically, CM argued that under Hawai'i's statutory scheme, children are treated differently than adults. In addition, counsel pointed to the differences in the statutory language and argued that, notwithstanding Tuialii, the Family Court has discretion not to order full restitution. CM further argued that, factually, the nature of CM's law violation was different than the crime in Tuialii and, unlike the defendant in Tuialii, CM did not reap any financial benefit from his law violation. Finally, it was argued that the fact that both CM and MV had the same insurance should be considered, as well as the fact that medical costs and expenses were never directly charged or paid out-of-pocket by MV or MV's family.

Pointing to Tuialii, the DPA argued that the Family Court need not concern itself with the insurance matters and then submitted on the State's written response, which argued, inter alia, that failure to make CM pay would be a windfall to him, that restitution serves a rehabilitative purpose, and that as a

7

matter of public policy, juveniles should make restitution just like adults.

At the conclusion of the parties' arguments, the Family Court denied reconsideration of the prior restitution order, declining to decide a restitution issue based on insurance subrogation or reimbursement arguments, and citing Tuialii. The Family Court acknowledged the factual distinction between this case and Tuialii, that CM and the victim both had the same insurer. The court made no comment on CM's other arguments except to state, "[i]n 571-48, it just says that this Court can order restitution."

On May 1, 2015, the Family Court entered its Order Denying Reconsideration, which included, in relevant part, the following FOFs and COLs:

### Findings of Fact

1. The minor intentionally shot a pellet gun at a fifteen year old girl's (victim) face on November 2, 2013 (the incident).

. . . .

5. The evidence is that the victim's medical bills were shown to be $23,434.85 as a result of the incident.

6. The State of Hawaii Med-QUEST Division (MQD) provides eligible low-income adults and children access to health and medical coverage through managed care plans.

7. The minor's family had Med-QUEST for medical insurance.

8. The victim's family had MED-QUEST for medical insurance.

9. The victim's medical bills of $23,434.85 were paid in full by Med-QUEST.

10. The victim had no out-of-pocket medical costs.

11. Therefore, both families involved in this incident were covered under the Hawai'i Med-Quest program.

12. The family court, pursuant to [HRS] § 571-48(11) ordered restitution in this matter for the amount of the medical bills, i.e., $23,434.85.

. . . .

14. This Court finds that the facts in this matter are distinguishable from the facts set forth in St. v. Tuialii, 121 Haw. 135, 214 P.3d 1125 (2009).

### Conclusions of Law

1. The purpose of a motion for reconsideration in juvenile court cases is to allow the court and the parties to make a complete record of the proceedings, and to set forth in writing the findings and disposition of the family court for appeal purposes. HRS § 571-54 (2002). In re Doe, 105 Haw. 505, 100 P.3d 75, (2004).

2. A motion for reconsideration is not an opportunity for a party to attempt to get the court to change its ruling -- it is to simply attempt to make a complete record for an appeal.[6]

3. It is the law in Hawai'i that this court should not sort out insurance indemnities, subrogation rights, and/or other potential civil law implications before ordering payment of restitution. St. v. Tuialii, 121 Haw. 135, 214 P.3d 1125 (2009).

4. Therefore, this court should not spend any time on trying to determine insurance matters. Tuialii, id, (2009).

5. Restitution contains a rehabilitative component as its purpose is not only to repay the person injured by the criminal act, but also to develop in the offender a degree of self-respect and pride for having righted a wrong committed. St. v. Feliciano, 103 Haw. 269, 81 P.3d 1184, (2003).

6. The purpose and intent of court ordered restitution is to have the convicted person repay society and his victims for his criminal acts, whenever deemed appropriate by sentencing court. St. v. Johnson, 68 Haw. 292, 711 P.2d 1295 (1985).

7. The restitution statutes have a purpose and design that encompasses both the punishment and the rehabilitation of the offender. HRS § 706-605(1)(e). St. v. Murray, 63 Haw. 12, 621 P.2d 334, (1980).

8. Legal or equitable principles, properly raised, will preclude any double recovery against the minor in a civil action or any unjust enrichment of either the principle or its insurer.

9. The questions the sentencing court must answer are whether the claimed loss resulted from the crime, and

---

[6] COL 2 is not challenged on appeal and does not compel a plain error review. Therefore, we do not address whether it is an accurate and/or complete statement of law.

9

whether it is the kind of loss for which restitution is authorized.

10. The applicable statute, HRS § 571-48(11), plainly grants this court the discretion to make a restitution award.

11. The statute requires no inquiry about the viability of civil claims, nor is any such inquiry called for by public policy.

12. This Family Court need not sort out insurance indemnities, subrogation rights, and/or other potential civil law implications before ordering the minor to repay the victim for medical costs under the restitution statute. Tuialii, [121 Hawai'i] at 142.

13. The fact that both families had Hawai'i Med-QUEST does not change the consideration by this Court on the issue of restitution.

On May 18, 2015, CM timely filed a Notice of Appeal.

## II. POINTS OF ERROR

On appeal, CM challenges all three restitution orders, as well as COLs 3-9 & 11-13, and raises three points of error: (1) the Family Court erred in ordering restitution without a restitution request; (2) the Family Court erred in ordering restitution; and (3) the Family Court erred in ordering monthly restitution payments of $300.00.

## III. APPLICABLE STANDARDS OF REVIEW

The Family Court's authority to award restitution, is based on a statute, HRS § 571-48(11) (2006).

> The interpretation of a statute is a question of law reviewable *de novo*.
>
> Furthermore, our statutory construction is guided by established rules:
>
> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
>
> [The appellate] court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning. Laws *in pari materia*, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

State v. Young, 107 Hawaiʻi 36, 39-40, 109 P.3d 677, 680-81 (2005) (citations, internal quotation marks, brackets, and ellipses omitted; format changed) (quoting State v. Kaua, 102 Hawaiʻi 1, 7-8, 72 P.3d 473, 479-80 (2003)).

HRS § 571-48(11) provides that the Family Court "may" order restitution. "The term 'may' is generally construed to render optional, permissive, or discretionary th3 provision in which it is embodied; this is so at least when there is nothing in the wording, sense, or policy of the provision demanding an unusual interpretation." State v. Kahawai, 103 Hawaiʻi 462, 465, 83 P.3d 725, 728 (2004) (citation omitted). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." State v. Plichta, 116 Hawaiʻi 200, 214, 172 P.3d 512, 526 (2007) (citation and internal quotation marks omitted).

IV.  DISCUSSION

A.  The Request for Restitution

CM contends that the Family Court erred in ordering restitution without a restitution request. This contention is

without merit. First, as argued by the State, this issue was not raised in the Family Court proceedings and is deemed to be waived. See State v. Fagaragan, 115 Hawai'i 364, 367-68, 167 P.3d 739, 742-43 (2007). Moreover, the record clearly shows that MV's family did in fact request restitution. The family's request that restitution be made was noted at the November 10, 2014 hearing; it was reported in the January 5, 2015 Updated Social History Report; it was again noted at the January 5, 2015 hearing. At the March 2, 2015 restitution hearing, MV's mother was at the courthouse to testify in support of the medical records, but her testimony was unnecessary as CM's counsel had no objection to their entry into admission or the reasonableness of the medical expenses.

B.    The Family Court's Order for Restitution

CM's primary argument on appeal is that the Family Court erred in relying on Tuialii as binding authority and support for ordering CM to pay restitution, emphasizing that Tuialii is distinguishable because it dealt with an adult criminal defendant ordered to pay restitution pursuant to HRS §§ 706-605(7) (2014) & 706-646 (2014), as opposed to a minor law violator ordered to pay restitution pursuant to HRS § 571-48(11).

Before addressing the substance of this argument, we note that CM did not make this argument to the Family Court at the initial restitution hearing held on March 2, 2015. At the March 2, 2015 hearing, CM challenged the award of restitution on the grounds that, unlike the situation in Tuialii, CM and the

12

victim had the same insurance carrier.[7]  In light of that argument, the Family Court stated that "[t]he issue is whether or not the full amount should be awarded, pursuant to State versus Tuialii."  The DPA then argued that the full amount should be awarded because "a criminal court need not sort out insurance indemnities, subrogation rights, or other potential civil law implications before ordering a person convicted of a crime to repay his victim under the criminal restitution statute."  The DPA further argued that the same principle should be applied in the family courts, i.e., that the family court judges should not have to sort out any insurance-related issues.

The Family Court then noted that MV is the victim of CM's law violation for restitution purposes,[8] notwithstanding that her medical bills were fully paid by insurance, but queried whether HRS § 571-48(11), which the court noted "permits" restitution, should be interpreted the same as the penal code provision that was examined in Tuialii.  The DPA acknowledged the lack of authoritative guidance, but posited that "the same line of thinking as went along with restitution in a criminal case would logically flow into the Family Court disposition, such as this."  CM's lawyer pivoted back to his original argument and requested the opportunity to submit an offer of proof as to the

_____

[7]  Although the Family Court's related conclusion, COL 13, is listed in CM's points of error, CM makes no supporting argument.

[8]  In Tuialii, Tuialii argued, inter alia, that an insurer is not entitled to restitution because it is not a victim within the meaning of HRS § 706-646(1).  121 Hawai'i at 140, 214 P.3d at 1130.  This court rejected Tuialii's argument with respect to the order of restitution in that case, which ordered Tuialii to pay restitution to the victim of crime, and not the victim's insurer.  Id.

two families' insurer carrier(s), which was allowed. He further argued that, unlike the defendant in Tuialii, neither CM nor his parents received a windfall from the "crime" and there is no rehabilitative purpose in ordering the restitution. Based on the arguments that were presented, the Family Court orally ruled:

> Okay. You know, I kind of agree with [the DPA]. Tuialii applies in this case as far as restitution. And it's not up to this Court to start sorting out who paid what. I believe Tuialii is clear that this Court should order the full amount of restitution. And it's up to the parties, then, in some other matter or some other venue to then try and resolve as far as insurance payments, and so forth.
> So I am going to order -- what was proven to this Court was the victim suffered medical costs in the amount of $23,434.85. And that the minor shall be ordered to pay restitution in amount of $23,434.85. And that is to be paid in the amount of $200 a month, beginning the last day -- and it will be due the last day of each month, beginning April 2015.
> This is an interesting issue, Mr. [CM's attorney]. Perhaps maybe one of you can do further research and do a motion for reconsideration.

In the Motion for Reconsideration, however, CM made two overarching arguments for reconsideration of the order for restitution: (1) that family court matters involving minors are distinguishable from adult criminals matters and the respective statutory restitution provisions are different, which is the primary argument made on appeal; and (2) that this case is factually distinguishable from Tuialii on various grounds, including that there is no windfall benefit to CM, because this case involves medical expenses rather than theft, and his earlier argument, that in this case both CM and his victim were covered by Quest, which is a state and federally-funded Medicaid program

that provides health coverage through health plans for eligible Hawai'i residents.[9]

In its oral ruling at the April 20, 2015 hearing on the Motion for Reconsideration, the Family Court recognized the factual distinctions between this case and Tuialii as to the common insurance company. The Family Court then reiterated that, based on Tuialii, it should not attempt to decide issues involving subrogation, reimbursement, or other insurance related matters in conjunction with its decision to order CM to pay restitution to the victim of his law violation. The Family Court did not address CM's arguments concerning the differences between juvenile and adult criminal proceedings, either at the hearing or in the Order Denying Reconsideration.

1.   *Tuialii*

In Tuialii, Tuialii argued that ordering him to pay restitution was illegal because:   (1) an insurance company is not a victim under HRS § 706-646; (2) the plain language of HRS § 706-646 disallows restitution to the extent the victim received insurance payments; and (3) if the victim was covered by insurance, then restitution was neither rehabilitative nor compensatory.   121 Hawai'i at 139, 214 P.3d at 1129.   This court rejected these arguments, based on its review and application of HRS §§ 706-605(7) and 706-646, and held that:   (1) Tuialii was properly ordered to pay restitution to the victim of Tuialii's theft, not the victim's insurer, in compliance with HRS § 706-

9       See Hawai'i Department of Human Services, Med-QUEST Division, http://www.med-quest.us/FAQ/mqdfaq.html (last visited September 7, 2017) (describing Quest).

646(1); (2) HRS § 706-646 does not support the theory that a crime victim has not suffered a loss if (or to the extent that) the victim has received indemnification from an insurer; and (3) ordering a criminal defendant to repay the full amount of the losses caused by his or her crime furthers the rehabilitative purpose of HRS § 706-646 and properly compensates the victim for losses suffered as a result of the defendant's offense.  Id. at 140-42, 214 P.3d at 1130-32.  With regard to the latter issue, this court further concluded that a "criminal court need not sort out insurance indemnities, subrogation rights, and/or other potential civil law implications before ordering a thief or other criminal to repay his victim under the criminal restitution statute."  Id. at 142, 214 P.3d at 1132.

Upon review of the Family Court's Order Denying Reconsideration in this case, we cannot conclude that the challenged COLS, enumerated above, wrongly state the law (concerning restitution in criminal matters) or are inconsistent with Tuialii or the other cases cited by the Family Court. Notwithstanding the differences between the chapter 571 restitution provisions and the Hawai'i Penal Code restitution provisions, which we address below, the Family Court did not err in concluding that family courts, like criminal courts, need not sort out insurance indemnities, subrogation rights, and/or other potential civil law implications before ordering a minor law violator to repay his or her victim under the family court restitution statute, HRS § 571-48(11).  The rationale stated in Tuialii for disregarding the insurance status of the victim,

which is based on rehabilitative and compensatory principles, is applicable to family court restitution proceedings. See Tuialii, 121 Hawai'i at 142, 214 P.3d at 1132; see also Bynum v. Magno, 106 Hawai'i 81, 101 P.3d 1149 (2004) (prohibiting the reduction of a tort plaintiff's damages award to reflect discounted amounts paid by Medicare/Medicaid, as well as payments/benefits received by insurance, based on the collateral source rule). Nevertheless, we must consider the differences between the restitution statutes applicable to juveniles and adults.

### 2. Restitution and Juvenile Justice

Although we find no specific error in the Family Court's written COLS that are challenged on appeal,[10] it appears from the record that the Family Court's restitution order may have been based on an erroneous view that Tuialii compelled the Family Court to order CM to pay restitution in the full amount of MV's medical expenses. At the March 2, 2015 hearing, in announcing its ruling, the Family Court stated, "I believe Tuialii is clear that this Court should order the full amount of restitution." Although this statement was made without the benefit of CM's later arguments and citations concerning the differences between the chapter 571 restitution provision and the adult penal code restitution statute, it is unclear whether the Family Court continued to view Tuialii as nevertheless mandating this result.

We begin with the applicable statutes. In this case,

---

[10] However, as discussed below, the principles of law stated are not fully and necessarily applicable to family court law violation adjudications.

restitution was ordered pursuant to HRS § 571-48(11), which provides:

> (11)  **The court may order** any person adjudicated pursuant to section 571-11(1) to make restitution of money **or** services to any victim who suffers loss as a result of the child's action, **or** to render community service;

(Emphasis added.)

In contrast, HRS § 706-605(7) provides:

> (7)  **The court shall order** the defendant to make restitution for losses as provided in section 706-646. In ordering restitution, **the court shall not consider the defendant's financial ability to make restitution in determining the amount** of restitution to order. The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment.

(Emphasis added.)

HRS § 706-646(2) and (3) further specify:

> **§ 706-646  Victim restitution.**
>
> . . . .
>
> (2)  **The court shall order the defendant to make restitution** for reasonable and verified losses suffered by the victim or victims as a result of the defendant's offense when requested by the victim. . . .
>
> (3)  In ordering restitution, **the court shall not consider the defendant's financial ability to make restitution in determining the amount** of restitution to order. The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment. The court shall specify the time and manner in which restitution is to be paid. **Restitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses**[.]

(Emphasis added.)

Unlike the penal code statute, the family court restitution statute is permissive or discretionary and does not mandate an order for restitution in every case in which restitution is requested. It appears that the Family Court recognized this distinction. See, e.g., COL 10. HRS § 571-48(11) provides even greater flexibility, however, authorizing a

family court to order a minor law violator to make restitution by way of services to the victim, or to render community services instead, and does not specifically require reimbursement of the "full amount" of the victim's loss. These options stand in sharp contrast to the HRS § 706-646(3) mandate that "[r]estitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses[.]"[11] HRS § 571-48(11) does not prohibit, for example, a family court's consideration of a young teen's ability to pay full restitution or the impact of a restitution order on a distressed family. There is nothing in the record to indicate that the Family Court considered these issues and alternatives and, as noted above, it appears that the Family Court may have considered itself restrained from exercising these options.

HRS § 571-1 provides that, pursuant to chapter 571, the family courts are established "for a policy and purpose of said courts to promote the reconciliation of distressed juveniles with their families, foster the rehabilitation of juveniles in difficulty, render appropriate punishment to offenders, and reduce juvenile delinquency." The mandate of the family courts includes that "all children found responsible for offenses shall receive dispositions that provide incentive for reform or deterrence from further misconduct, or both." HRS § 571-1. The

---

[11] We note that, in 2006, the legislature amended HRS § 706-646, to remove the criminal court's discretion in ordering restitution, changing "may order" to "shall order," as well as precluding the criminal court from considering the defendant's ability to pay when determining the amount of restitution. See 2006 Haw. Sess. Laws Act 230. No similar changes were made to the family court restitution statute.

Hawai'i Supreme Court has long recognized the significant differences between juvenile adjudications and adult criminal proceedings. See, e.g., State v. Riveira, 92 Hawai'i 521, 993 P.2d 555 (2000); State v. Sylva, 61 Haw. 385, 605 P.2d 496 (1980). Here, the Family Court relied strictly on adult criminal restitution cases and principles (see COLs 5-7 & 9) and concluded, inter alia, that "[t]he questions the sentencing court must answer are whether the claimed loss resulted from the crime, and whether it is the kind of loss for which restitution is authorized." COL 9. This inquiry is too narrow in the context of juvenile restitution proceedings pursuant to HRS § 571-48(11).

For these reasons, we conclude that the Order Denying Reconsideration, and the Family Court's restitution orders must be vacated and a new restitution hearing consistent with this opinion must be held on remand.

C.    Monthly Restitution Payments of $300.00

CM argues that the Family Court erred in ordering monthly payments of $300.00 because (1) the Family Court failed to consider CM's ability to make restitution payments for the purpose of establishing the time and manner of payment, as required in HRS § 706-646(3), and (2) the Family Court issued various orders in varying amounts, without notice, an opportunity to be heard, or an explanation as to why its decision changed. We agree. "While HRS § 571-11(1) proceedings need not conform with all of the requirements of a criminal trial, such proceedings must 'scrupulously maintain standards consistent with fundamental fairness.'" In re TC, 121 Hawai'i 92, 100, 214 P.3d

1082, 1090 (App. 2009) (quoting In re Doe, 62 Haw. 70, 73, 610 P.2d 509, 511-12 (1980)) (footnote omitted). We conclude that, when ordering restitution under HRS § 571-48(11), the Family Court is required to consider, *inter alia*, the minor's financial ability to make restitution payments for the purpose of establishing the time and manner of payment. See, e.g., State v. Johnson, 68 Haw. 292, 297, 711 P.2d 1296, 1299 (1985) (holding that "[t]he manner of payment must be reasonable and one that Defendant can afford taking into account Defendant's financial circumstances"). At a minimum, CM had a right to notice and an opportunity to be heard prior to the Family Court's material changes to the ordered restitution.

V.    CONCLUSION

For the foregoing reasons, we vacate the Family Court's May 1, 2015 Order Denying Reconsideration, as well as the March 2, March 16, and April 2, 2015 restitution orders, and remand this case for further proceedings consistent with this Opinion.

On the briefs:

Taryn R. Tomasa,
Deputy Public Defender,
for Minor-Appellant.

Tracy Murakami,
Deputy Prosecuting Attorney,
County of Kauai,
for Plaintiff-Appellee,
 State of Hawai'i.